UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SENECA INSURANCE COMPANY, INC.,                    :
                                                   :
                        Plaintiff,                 :
                                                   :        07 Civ. 11272 (RMB)
        -against-                                  :
                                                   :        **DECISION & ORDER**
ILLINOIS NATIONAL INSURANCE                        :
COMPANY,                                           :
                                                   :
                        Defendant.                 :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9 July 2009

**I.    Background**

On December 14, 2007, Seneca Insurance Company, Inc. ("Plaintiff" or "Seneca") filed a

complaint ("Complaint") against Illinois National Insurance Company ("Defendant" or "Illinois

National") alleging, among other things, that Seneca paid $350,000 towards a settlement of a

personal injury action styled Maldonado v. Kissm Realty Corp., et al., Index No. 44103/98, in

New York State Supreme Court, Kings County ("Maldonado Action") on behalf of Seneca's

insured Kissm Realty Corp. ("Kissm") pursuant to Seneca's Business Owners Policy Number

BOP5005138, effective March 1, 1998 (the "Seneca Policy"), and that Illinois National is

"obligated to indemnify Seneca" for the $350,000 pursuant to Illinois National's Commercial

Umbrella Policy Number BE3574014, effective April 1, 1998 (the "Illinois National Policy"),

under which Kissm is an additional insured.  (Compl., dated Dec. 11, 2007, ¶ 24; see also id.

¶¶ 1–3, 8–18.)  Plaintiff also alleges that "the insurance coverage that Illinois National provides

to Kissm as respects the Maldonado [Action] is first excess coverage" and "the insurance

coverage provided by Seneca is . . . excess to that provided by Illinois National."  (Id. ¶ 23.)

The parties agree that:  (i) on or about December 21, 1998, William Maldonado

commenced the Maldonado Action against Kissm to recover damages for "personal injuries he

allegedly sustained on June 12, 1998 while working on a premises owned by Kissm and leased to Health Insurance Plan of Greater New York ['HIP']"; (ii) Illinois National issued HIP the Illinois National Policy, with limits of $10,000,000 per occurrence and aggregate, and an annual premium of $11,026; (iii) Seneca issued Kissm the Seneca Policy, with limits of liability of $1,000,000 per occurrence, and an annual premium of $7,544; (iv) the Illinois National Policy provides that Illinois National "will pay on behalf of the Insured [i.e., Kissm] those sums in excess of the Retained Limit," defined as, among other things, "the applicable limits of any other underlying insurance providing coverage to the Insured [i.e., Kissm]"; (v) the Seneca Policy provides that Seneca "will pay on behalf of the Insured [i.e., Kissm] all sums which the Insured [i.e., Kissm] shall become legally obligated to pay as damages because of bodily injury, property damage, or personal injury caused by an occurrence to which this insurance applies"; (vi) on June 12, 1998, the day Mr. Maldonado allegedly sustained his injuries, Kissm was insured by the Illinois National Policy as an additional insured and was insured by the Seneca Policy as the "named insured"; and (vii) on or about October 22, 2003, the Maldonado Action was settled and Seneca paid $350,000 towards the settlement. (Def. Local Rule 56.1 Statement, dated Jan. 19, 2009, ¶¶ 1, 2, 10, 12, 13, 17, 18; Pl. Local Rule 56.1 Response, dated Jan. 30, 2009, ¶¶ 1, 2, 10, 12, 13, 17, 18; Pl. Local Rule 56.1 Statement, dated Dec. 5, 2008, ¶¶ 4, 5; Def. Local Rule 56.1 Response, dated Jan. 19, 2009, ¶¶ 4, 5; Ill. Nat'l Policy at §§ I, III(E); Seneca Policy at § II(E).)

On December 9, 2008, Plaintiff moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") arguing, among other things, that Seneca is entitled to indemnification from Illinois National for the $350,000 Seneca paid towards the settlement of the Maldonado Action because "the Seneca Policy applies excess over, and only after the exhaustion of, the Illinois National Policy." (Seneca's Mem. of Law in Supp. of Mot.

for Summ. J., dated Dec. 5, 2008 ("Pl. Mem."), at 14.)

On January 19, 2009, Defendant filed an opposition and cross-motion for summary judgment pursuant to Fed. R. Civ. P. 56 arguing, among other things, that Illinois National is not obligated to indemnify Seneca for any portion of Seneca's settlement payment in the <u>Maldonado</u> Action because "the umbrella policy issued by Illinois National [applies] excess over the commercial general liability [policy] issued by Seneca."[1] (Mem. of Law in Supp. of Def. Mot. for Summ. J., dated Jan. 19, 2009 ("Def. Mem."), at 1.) Defendant also argues that, pursuant to Fed. R. Civ. P. 37(c)(1), the Court should preclude certain evidence Seneca offers to support its summary judgment motion, including the Affidavit of Keith McCarthy ("McCarthy"), sworn to on November 2, 2008 ("McCarthy Affidavit"), because Seneca did "not properly disclose[]" this evidence to Illinois National before the close of discovery. (Mem. of Law in Opp'n to Seneca's Mot. for Summ. J., dated Jan. 19, 2009 ("Def. Opp'n"), at 4.)

On January 30, 2009, Plaintiff filed an opposition to Defendant's cross-motion and reply arguing, among other things, that "Illinois National has clearly not established an entitlement to the 'drastic remedy' of preclusion" pursuant to Fed. R. Civ. P. 37(c)(1) because, among other reasons, "[i]t was only during the course of actually preparing Seneca's motion for summary judgment that it became apparent that it would be prudent" to identify Mr. McCarthy, who has knowledge "concerning the premium allocation among the coverages [provided by the Seneca Policy]." (Seneca's Reply Mem. of Law, dated Jan. 30, 2009 ("Reply"), at 9; <u>see also</u> Seneca's Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., dated Jan. 30, 2009 ("Pl. Opp'n").)

---

[1]    The Court rejects Plaintiff's argument that "Illinois National violated this Court's Individual Practices" by not submitting a pre-motion letter before filing its cross-motion for summary judgment. (Pl. Opp'n at 2.) The Court expressly granted leave to both Plaintiff and Defendant to file motions for summary judgment at a May 20, 2008 conference and set the schedule for filing such motions. See Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001); Ocasio v. Fashion Inst. of Tech., 86 F. Supp. 2d 371, 375 (S.D.N.Y. 2000).

On February 12, 2009, Defendant filed a sur-reply.  (See Def. Reply to Pl's Opp'n, dated Feb. 12, 2009.)

The parties waived oral argument.

**For the reasons set forth below, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.**

## II.    Legal Standard

"Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" Ollman v. Special Bd. of Adjustment No. 1063, 527 F.3d 239, 245 (2d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)).  The moving party bears the burden of informing the district court of the basis for its motion.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "A court reviewing a motion for summary judgment must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Ollman, 527 F.3d at 245 (internal quotations omitted); see also Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir. 2006).

The same standard applies where, as here, the parties file cross-motions for summary judgment. See Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).  "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Id.

"[I]n a contract dispute, summary judgment may be granted only where the language of the contract is unambiguous[.]" John Hancock Mut. Life Ins. Co. v. Amerford Intern. Corp., 22

F.3d 458, 461 (2d Cir. 1994). The language of "an insurance policy is unambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the policy itself, and concerning which there is no reasonable basis for a difference of opinion." Nouveau Elevator Indus., Inc. v. Continental Cas. Ins. Co., No. 05 Civ. 813, 2006 WL 1720429, at *3 (E.D.N.Y. June 21, 2006) (internal quotations omitted). "[T]he interpretation of unambiguous provisions in insurance contracts is a pure question of law." Philadelphia Indem. Ins. Co. v. Employers Ins. Co., 318 F. Supp. 2d 170, 172 (S.D.N.Y. 2004).

### III.    Analysis

Defendant argues that "[t]he Illinois National Policy is excess to the Seneca Policy for purposes of the [Maldonado] settlement" because, among other reasons, the Seneca Policy is "a primary policy available to Kissm" and the Illinois National Policy is "clearly meant to be excess over and above all available primary policies." (Def. Mem. at 7; Def. Opp'n at 8.) Plaintiff counters that "the Seneca Policy provides final tier coverage over the Illinois National Policy" because, among other reasons, the Seneca Policy's other insurance clause, (see Seneca Policy at 17, ¶ 10), "manifests that it is intended to be excess over any other excess policies," including the Illinois National Policy, and a comparison between the annual premiums charged under the Illinois National Policy and Seneca Policy "support the conclusion that the Seneca Policy was issued to provide coverage of last resort." (Pl. Mem. at 16, 24; Pl. Reply at 6.)

Under New York law, "to determine the priority of coverage among different policies, a court must review and consider all of the relevant policies at issue." BP Air Conditioning Corp. v. One Beacon Ins. Group, 8 N.Y.3d 708, 716 (2007). The determination of priority "'turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of its provision concerning

excess insurance.'" Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co., 53 A.D.3d 140, 148 (1st

Dep't 2008) (quoting State Farm Fire & Cas. Co. v. LiMauro, 65 N.Y.2d 369, 374 (1985)).[2]

Based upon the unambiguous language of the policies at issue, the Illinois National

Policy's umbrella coverage is excess to the Seneca Policy's primary coverage and, therefore,

Defendant is not obligated to indemnify Plaintiff for the $350,000 Seneca paid towards the

settlement of the Maldonado Action.  See 83 Kajima Const. Servs., Inc. v. Cati, Inc., 302 A.D.2d

228, 229 (1st Dep't 2003) ("where, as here, the coverage of one insurer must be primary and the

other excess thereto, the primary insurer must pay up to the limits of its policy before the excess

insurer becomes obligated to pay under its policy"); see also Cheektowaga Cent. Sch. Dist. v.

Burlington Ins. Co., 32 A.D.3d 1265, 1267 (4th Dep't 2006); see also 1 Barry R. Ostrager &

Thomas R. Newman, Insurance Coverage Disputes, § 13.04 (13th ed. 2006) ("An excess insurer

generally has no duty to contribute to a settlement until the primary insurer's policy limits have

been exhausted.").

**Seneca Policy**

The Seneca Policy is clearly a primary policy.  First, the Seneca Policy covers "all sums

which the Insured [i.e., Kissm] shall become legally obligated to pay as damages . . . caused by

an occurrence to which [the] insurance applies" up to $1,000,000 per occurrence.  (Seneca Policy

at § II); see Am. Home. Assurance, 984 F.2d at 77 (primary insurance "attaches immediately

upon the happening of an occurrence"); see also Ostrager §§ 6.03(a); 7.01.

Second, the Seneca Policy does not require the insured to maintain other insurance

underlying the Seneca Policy and has a $1,000 deductible.  (See Seneca Policy's Deductible

---

[2]     The Court applies New York law because "the parties agree that New York law governs
this diversity case [and] their consent concludes the choice of law inquiry."  British Intern. Ins.
Co. Ltd. v. Seguros La Republica, S.A., 342 F.3d 78, 81 (2d Cir. 2003); see Philadelphia Indem.
Ins., 318 F. Supp. 2d at 172; (see also Pls. Mem. at 15; Def. Mem. at 4.)

Endorsement No. 41–113 ("We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible[.]")); 233rd St. P'ship, L.P. v. Twin City Fire Ins. Co., 52 A.D.3d 292, 293 (1st Dep't 2008) ("primary policy" where, among other things, "there is no primary insurance underlying defendant's policy, and its coverage is subject only to the payment of a deductible"); see also 14-102 Appleman on Insurance 2d § 102.6 ("underlying" means "[t]he amount of insurance or reinsurance on a risk (or occurrence) which applies to a loss before the next higher excess layer of insurance or reinsurance attaches").

**Illinois National Policy**

The Illinois National Policy is an excess policy.  First, the Illinois National Policy is denominated a "Commercial Umbrella Policy" which is "indicative of [the] insurers' intent to offer excess coverage."  United Nat'l Ins. Co. v. Lumbermens Mut. Cas. Co., 89 Civ. 3869, 1990 WL 176614, at *3 (S.D.N.Y. Nov. 5, 1990); see LiMauro, 65 N.Y.2d at 376; see also 8A Appleman on Insurance 1st § 4909.85 ("[U]mbrella coverages . . . are regarded as true excess over and above any type of primary coverage[.]").

Second, the Illinois National Policy's coverage is limited to "those sums in excess of the Retained Limit," defined as, among other things, "the applicable limits of any other underlying insurance providing coverage to the Insured [i.e., Kissm]."  (Ill. Nat'l Policy §§ I, III(E)); see Am. Home Assurance Co. v. Republic Ins. Co., 984 F.2d 76, 77 (2d Cir. 1993) ("excess coverage . . . attaches only after a predetermined amount of 'primary' coverage has been exhausted"); see also Lumbermens Mut. Cas. Co. v. Allstate Ins. Co., 51 N.Y.2d 651, 654–55 (1980) (policy provided excess coverage where insurer would "pay the net loss in excess of insured's retained limit," defined as, among other things, "the applicable limits of any other underlying insurance collectible by the insured") (internal quotations omitted).

7

Third, the premium of $11,025 for a $10,000,000 limit of liability "reflect[s] the rarity of [Illinois National's] ultimate requirement to contribute to a settlement." Lumbermens, 51 N.Y.2d at 656; see also Inst. for Shipboard Educ. v. Cigna Worldwide Ins. Co., 22 F.3d 414, 426 (2d Cir. 1994) ("premium of $10,000 for [an umbrella] policy whose limit of liability is $10,000,000 is relatively low").

The language of the Seneca Policy's "other insurance" clause, (Seneca Policy at 17, ¶ 10), does not change the outcome here.[3] See Sport Rock Intern., Inc. v. Am. Cas. Co., 878 N.Y.S.2d 339, 345 n.5 (1st Dep't 2009). Under New York law, "an excess 'other insurance' clause will not render a policy sold as primary insurance [i.e., the Seneca Policy] excess to a true excess or umbrella policy sold to provide a higher tier of coverage [i.e., the Illinois National Policy]." Id.; see Home Ins. Co., Inc. v. Liberty Mut. Ins. Co., 678 F. Supp. 1066, 1069 (S.D.N.Y. 1998) ("New York courts have consistently found that an umbrella policy is not required to contribute to the payment of a settlement until all other applicable policies have been exhausted regardless of the wording of those policies' 'other insurance' clauses."); see also Bovis, 53 A.D.3d at 150.

Nor does a comparison between the annual premium paid under the Illinois National Policy ($11,025) and the annual premium paid under the Seneca Policy ($7,544) alter the outcome. See Northbrook Excess & Surplus Ins. Co. v. Chubb Group, 113 A.D.2d 319, 325 (1st Dep't 1985). Because the Illinois National Policy and the Seneca Policy insured "different risks" for "two different [named] insureds," (Def. Opp'n at 7), "the premium disparity reflected not

---

[3]     The Seneca Policy's "other insurance" clause provides: "This insurance shall apply only as excess insurance over any other valid and collectible insurance which would apply in the absence of this policy, except insurance written specifically to cover as excess over the limits of liability applicable to section 2 of this policy." (Seneca Policy at 17, ¶ 10.)

different layers of coverage but rather significant differences in the number and types of risks covered."[4] U.S. Fire Ins. Co. v. Fed. Ins. Co., 858 F.2d 882, 887 (2d Cir. 1988); see United Nat'l Ins. Co. v. Lumbermens Mut. Cas. Co., No. 89 Civ. 3869, 1994 WL 259820, at *4 (S.D.N.Y. June 8, 1994); see also Cont'l Cas. Co. v. Aetna Cas. & Sur. Co., 823 F.2d 708, 712 (2d Cir. 1987) ("premium charges cannot rationally be compared" where, among other things, the "insurance policies cover different types of risk as well as different amounts") (emphasis omitted).

### Defendant's Fed. R. Civ. P. 37 Application

Because Defendant is entitled to summary judgment, the Court denies as moot Defendant's Fed. R. Civ. P. 37 application to exclude certain evidence offered by Plaintiff. See Davey v. Jones, No. 06 Civ. 4206, 2008 WL 5061631, at *1 (S.D.N.Y. Dec. 1, 2008); Colonia Ins. Co. v. City Nat. Bank, 988 F. Supp. 1242, 1254 (W.D. Ark. 1997) ("In view of the fact that we are granting [defendant's] motion for summary judgment on all plaintiffs' claims, [defendant's] request for Rule 37(c)(1) sanctions for exclusion is moot.") Even if the Court were to consider Plaintiff's evidence (i.e., the McCarthy Affidavit which purports to explain the premium allocation under the Seneca Policy), the outcome would not change because, as explained above, the premiums charged under these policies do not reflect "different layers of coverage" as much as "the number and types of risks covered." U.S. Fire Ins., 858 F.2d at 887; see Northbrook, 113 A.D.2d at 325.

---

[4]     The Illinois National Policy's named insured was Kingsboro Medical Group, while the Seneca Policy's named insured was Kissm. (See Ill. Nat'l Policy Decl. Page; Seneca Policy Decl. Page.) And, the Illinois National Policy provided coverage for, among other things, commercial general liability, employee benefits liability, automobile liability, and employers liability, whereas the Seneca Policy provided coverage for, among other things, general business liability, fire legal liability, and medical payments. (See Ill. Nat'l Policy Sch. of Underlying Ins.; Seneca Policy Decl. Page.)

9

IV.     **Conclusion**

For the reasons set forth above, Plaintiff's motion for summary judgment [#20] is denied

and Defendant's cross-motion for summary judgment [#26] is granted.  The Clerk of Court is

respectfully requested to close this case.


Dated:  New York, New York
        July 9, 2009

                                              *RMB*
                                        _____
                                        **RICHARD M. BERMAN, U.S.D.J.**